Good morning. May it please the Court, my name is John Williams and I represent the appellants in this appeal. It's my intention to reserve five minutes of my time for rebuttal. I know this case is well-briefed, but I'd like to focus my... You'd be welcome to submit on the briefs if you'd like.  Sure. On your Medical Experimentation Act issue, my impression was that your definition was broad enough to include what most physicians do in practice every day. In practice every day, physicians maybe read an article in one of the medical journals, maybe hear from another doctor and then check it in the medical journals, that some off-label use of a medication or some slightly different procedure in a surgery works better or works for a particular condition. So they'll start off, say, with a patient who has not responded well to the medication and they'll try something new. They'll try this off-label use of some other medication that they read sometimes works for this condition. Now, as I understand it, your definition of medical experimentation would include that, and if so, it includes everything. It includes all that doctors do. I guess my response to that is no, that wouldn't be correct for obvious reasons. Not obvious to me, so make them obvious. Not obvious to me either. In the way that the Court asked the question, clearly that's not the definition that was sought with respect to these particular claims. What we were trying to say is the definition is... Well, it looks to me as though what you had here was a surgery that works well for nearsightedness and it was sort of in the gray area between approved and off-label for farsightedness. And some doctors were trying it on farsightedness, more in Europe than the U.S. That's not to say it's right, but it is to say that it's not medical experimentation unless you have a very broad definition of experimentation under that Medical Experimentation Act. Well, first, these procedures for farsightedness were specifically not approved by the FDA. Were they disapproved? Well, they had not been approved yet. Were they disapproved? I don't think that's the case. Well, and also, as I understood your complaint, the reason that your client obtained this surgery was for corrective medical purposes, correct? Well, and I would counter and say these, and this was specifically pled, that these were elective procedures, that they weren't medically necessitated, that they're more akin to... Most of what you're saying is irrelevant to medical experimentation. That's not really relevant, though. But let's just go back to my question. Sure. Did you allege in your complaint that this procedure was undertaken for a medical purpose to improve your client's condition? Actually, the allegation is to the contrary. The allegation in the complaint were these were elective procedures that were not medically necessary. I didn't ask if they were medically necessary. You see, that's not the... Let me just read the language in the statute, because you haven't answered my question about whether they were going to be used to improve your client's condition. The language in the statute regarding experimentation has to be in a manner not reasonably related to maintaining or improving the health of the subject or the patient. And I'll do my best to answer the court's question. Our position is this standard of reasonably related to a medical condition is not as clear cut as the district court thought it was, that when you have a procedure like this that is elective and some might even say cosmetic in nature, you're dealing with a procedure here where essentially... So if I go in for plastic surgery and it's cosmetic, does that make it an experiment? I mean, I don't see anything in the statute where the elective nature of it has anything to do with it. Maybe you can point me, is there anything in the statute that relates to elective? No, but when you're talking about the reasonably related to maintaining or improving a health condition... Counsel, I think we're talking across purposes because we're using different unstated definitions of experiment. The traditional understanding of an experiment is you have a four-square test. Two of the squares are for people that get the variable or don't get the variable, that would be the surgery, when they're farsighted. And two of the squares would be for, I think I might have misstated the experiment, but the control group and the test group. You're not allowed to do the surgery on the control group. You just tell them they had the surgery, even though they didn't, because you're trying to filter out placebo effect. That's the way FDA experiments are done. That's the way pretty much all experiments are done. You have double-blind studies. Some get placebos, some get the treatment, and you see if the treatment works better than the placebos. The purpose of that is to find out if the treatment works. The purpose here seems to be to use an unapproved off-label for investigational use only procedure to actually treat patients and correct their farsightedness. And there's no control group. There's no experiment. The doctors who are doing it aren't seeking FDA approval for it. They're just doing something, as I understand it, to correct their patient's farsightedness, even though the treatment had not yet been approved for that beyond investigational use. They weren't doing a proper investigation. I would say it hadn't been approved, and the FDA told them not to do it, warned them not to do it. Okay, let's stipulate that they were doing a bad thing. They were doing it without informed consent. They were doing something that the FDA said not to do. I still don't get where it falls under the Medical Experimentation Act, as opposed to, say, assault and battery or negligence. I understand the Court's concern, and I think that there are no authorities on this issue that we have been able to uncover. So I recognize that the Court is struggling with this issue. The reasonably related to maintaining or improving a health condition, my argument was, with respect to the elective nature and the fact that this was cosmetic, was this reasonableness. Well, let's stop right there. I found my reference that you seem to be alluding at this point. In the complaint, paragraphs 12 and 13, the reason that the surgery took place was, quote, to attempt to correct farsightedness. How can that not be related to maintaining or improving health? Well, I would say, how can it not be reasonably related to it? And it's the reasonableness issue. It's not reasonably related? If it's not approved and the FDA has said, don't use it. Where does it say not approved? You see, if I go in and I get, it's later approved, we all agree. It's later approved. So if I go in today and I get that surgery, I would be improving my health, correct? Well. Yes or no? Yes or no. I would say that that would. Yes or no, if I go in today and I get this surgery for my eyes, would I be improving my health? I wouldn't say that that's reasonably related to improving health. I didn't ask that. I asked you first if it would be improving the health. I would say yes. You could have that. Okay. So with it being yes, then the next question would be, would that procedure be reasonably related to improving the health? I think that's the correct question. That's right. And I think that there. What would be your answer to that? Well, I think there can be a dispute of fact on that. How could there be a dispute of fact on whether something is reasonably related to improving your health if, in fact, your client alleges in their complaints that they went in or he went in to actually get this to correct the farsightedness? Because at the time, this particular use of this laser was not FDA approved for this procedure. There were other FDA approved procedures for addressing farsightedness. There are other ways of addressing farsightedness and correcting it that don't involve surgery. Glasses. I mean, this is why I say this is a. . . What you're saying is not that it wasn't designed to correct the patient's farsightedness. You're saying it wasn't reasonable to do this to correct the patient's farsightedness. And you think that the reasonably in the definition of experiment has that broad an application. If it's unreasonable to do something, then it's an experiment. I don't know if it's that broad, but I also think that we can't read reasonably out of the statute. So what your definition of reasonably would actually insert a little phrase in the statute, reasonably, that it would have to be approved, an FDA approved use, correct? Well, typically what is reasonable under the circumstances is going to be a factual issue. And I could imagine there would be expert testimony on both sides of this issue. Okay, so can we just go back to the question again? Sure. The question is, in your view, to interpret reasonably in the statute in this context, you would require that there be FDA approval. Yes or no? Yes, that would be one factor. I think there could be other factors, too. If there were other approved procedures or methods for correcting this condition. That takes us back to my initial question. Every off-label use by a physician of a medication is medical experimentation, in your view. And, gosh, I would say, since approval is so expensive to get, I would guess that most administrations of medication by physicians are for off-label purposes. I guess I distinguish this from an off-label use, as the Court portrays it, because this is a particular procedure where the FDA has said, don't do it this way. And there can be off-label uses where the FDA hasn't sounded in on that, where that's still under consideration. What was the outcome of this procedure for your client? The outcome was mixed with respect to the various potential class members. Let me ask you, what was the outcome with respect to your client? I don't know that, Your Honor. You don't know that? I don't know that. I don't know that that was pled. You never asked your client how the procedure turned out? I was in trial counsel, Your Honor. That's not an answer. You don't know that? Well, it's not a personal injury matter, Your Honor, in terms of what the outcome was. That's not the nature of the case. So as far as we know, all these patients got surgery that was approved by the FDA only for investigational purposes, even though it was not a proper investigation. The FDA had said, don't use it for regular treatment, as opposed to investigational purposes. And as far as we know, it worked on every one of the plans. I don't know that it did or did not work on every one of the plaintiffs. You don't know, but it's not pled that it didn't, right? That's correct. This is a lawsuit in search of a cause of action, is what it is. Well, I think that with respect to this particular theory, our position has been that the purpose of this statute is much broader than this particular reading of what the definition is of reasonably related to maintain or improving health. And I think that if you take the district court's logic to its extreme, then any experiment, as long as the purported purpose of the experiment is to improve health, wouldn't be covered under this act. You know, you could hook somebody up to a car battery. Experiments aren't to improve health. Experiments are to find out if something works. Well, and I guess that's the conundrum here, because this is supposed to cover medical experiments. And if all experiments logically are to improve health, then none of them are covered under this act. No, they're not. They don't know that yet. To find out if something works. That might be a consequence of the experiment, but that may not be the purpose if there's an actual experiment. The way it works is you've got the control group and the treatment group, and you generate numbers for improved with the treatment, improved without the treatment, not improved with the treatment, and not improved without the treatment. And you've purposely done it double blind with the control group, intending that and hoping that nobody in the control group will benefit in the slightest. That's how you do a medical experiment. I understand what you're saying, Your Honor. But I guess our position is with respect to the act itself, if it's not read broadly consistent with its purpose, then the opposite can occur. And I understand the Court's concern that every experimental or off-label use would be considered an experiment. On the flip side, if all that needs to be done in order to avoid the act is that it has some purpose or intention to treat some condition, then practically any procedure would be outside the act. What measure of damages are you seeking in this case? The damages include restitution, injunctive relief, as well as damages under the CLRA. I thought you wanted profits, as I read the complaint. That's right. We've been focusing on the subsection A so far, but subsection B seems to me to be another stumbling block for you because that requires clinical trials. And I don't understand your argument as to how this could possibly fit under B. Well, the argument under B is that the act applies in approved clinical trials, and what was happening was these were experimental clinical trials that were unapproved. Why are they clinical trials? You take every word that you're dealing with and you add to it a definition that the dictionary in real life doesn't carry. How could this be a clinical trial? These were experimental procedures that were performed as if they were in a clinical trial. As if. You see, you're trying hard to put a foot into the glass slipper that doesn't fit. I understand your concern. Our position was that to the extent that the… Stop saying our position. We know what your position is. We want to know the way the whole thing works. Well, the argument is this. To the extent that the act requires the kind of compliance with the act, the informed consent in approved clinical trials, what you had here was you had these physicians doing these acts outside of the scope of the clinical trials that were not subject to the act, but yet they were doing the same things, and therefore the protection for the unwitting patient was even less. Mr. Williams, did you want to reserve time? You're down to about three and a half minutes. I see that. Thank you, Your Honor. I will. Good morning. Thomas M. Robbins, the third appearing for appellee NIDAC. NIDAC is prepared, unless there's questions from the court, to submit on this briefing. Could you tell me what's preempted and what's not preempted? Your Honor, I would respectfully defer to the counsel for the physician defendants who are more prepared than I am to do this. I'm prepared to address any of the issues that we raised below that are specific to NIDAC, which would be wholly independent of how the district court ruled  Thank you. Good morning. May it please the Court. Kenneth Pedroza for the estate of Glenn Kawish and Dr. Ugooty. Do each of these seven defendants plan to speak this morning, counsel? Your Honor, we conferred in advance. I think I was going to take the lion's share of time. And if Your Honor's had any further questions, maybe one or two minutes for each. Maybe I can cover all of it and dispense with some of this. You asked which claims are preempted. The CLRA claim is preempted as well as the fraud by omission claim, Your Honor. Both of those rely and are completely tethered to the FDCA. Without it, neither claim exists because the claim is, you should have told us that the laser was not FDA approved. Without the FDCA, there is no duty to disclose. There is no materiality. That disclosure is not relevant, making both of those. The FDCA again? The Food, Drug, and Cosmetic Act, if I got it right. So both of those claims are preempted. Once those two claims are preempted, and assuming that the first claim for human experimentation does not pass muster, then the aiding, abetting, and conspiracy fall because there's no substantive allegations for those to support. If I may address an earlier question about the nature of the allegations. Your Honor is correct. Page 159 and 160 of the excerpts of the record contain the allegations that for all three plaintiffs, the only three that we have in the case, this is an attempt to correct farsightedness. This clearly is an attempt to provide medical care and treatment for the patients. Your Honor asked about whether or not these worked. Most certainly, there's not an allegation that they didn't work. In fact, as has already been recognized, off-label use is a common practice for physicians. In fact, physicians are oftentimes, with off-label use, able to identify uses for either drugs or devices in any advance of the FDA in an ability to care and treat patients. So is it your position anytime there's a therapeutic use that, by definition, you've excluded experimental use under the statute? Would you repeat that one more time? Every time there's a therapeutic use of an off-label drug or device, by your definition, does that automatically mean that it is not experimental? No. If you're in an experiment and you are participating in an experiment, whether therapeutic or not, you would still have to give a consent. If, however, you're a physician outside of a clinical trial or experiment and are engaging in an off-label use that's therapeutic, no, it's not experimental. Experiment is defined with reference to therapeutic treatment. So you've now made kind of three categories, clinical trials, experimental use, and therapeutic. But therapeutic and experimental are tied together in the statute. So how do you untangle those? Well, then, to an extent, I guess there is, from the statutory language, a therapeutic benefit that would fall outside of the experiment category. But I think in terms of this case and the record that we have here, most clearly my clients and the rest of the defendants here were not participating in an experiment nor in a clinical trial. Those allegations were made in the second amended complaint where plaintiffs alleged they were not participating in a clinical trial. Those were not included in the third amended complaint, but I certainly think that's a judicial admission that can be considered. When you talked about the preemption with respect to the California Consumer Act, there's one claim that's fraud by omission that's separate. What's the underlying claim under the Consumer Act? I believe the underlying claim under the Consumer Legal Remedies Act is that by omission we were implicitly representing that the laser was FDA approved. So it's really a variation on the theme of the fraud. It's an omission for failure to disclose? Absolutely. And so, thus, you have the same preemption analysis. In terms of the last comment I made about the second amended complaint, if you review excerpts of the record at pages 83 and 84, you will see in the second amended complaint the allegations for all three of the plaintiffs that they were not participants in a clinical trial, thus falling outside of subsection B of the Human Experimentation Act. Had it been in the third amended complaint? It is not. It was not included in the third amended complaint, only in the second amended complaint. Oh, I'm sorry. Let me address a standing issue because I know a number of the defendants have it. One of my clients, Dr. Ugudi, is not alleged to have even participated in treating any of the three plaintiffs. The only physicians are, I believe, Dr. Motwani and my client, the estate of Dr. Glenn Kawish. So to prevent five or six attorneys from having to come up and tell you that there's no standing against their clients, I'll raise that with Your Honors right now. Thank you. That would depend on class certification, right? I assume he treated other people but not the named plaintiffs? Certainly not the named plaintiffs, and the class hasn't been certified yet. So for our purposes now, there was a lack of standing. Unless Your Honors have any further questions, I will submit. Appears not. Thank you very much. Thank you. The remaining defendants also would like to submit on the briefs? Yes, Your Honor. Thank you. Yes, Your Honor. You have some time for rebuttal, Mr. Williams. Thank you, Your Honor. Very briefly, I'd like to address the preemption issue. The nature of the CLRA claims that have been raised are, as the court characterized them, the fact that this procedure was not approved by the FDA, this laser, was a material omission. And so what do we have? Well, we have allegations that show that the FDA had warned these defendants not to use this laser for that purpose. And so in this situation, there is no need to interpret the FDCA at all. We know that during the period of 1996 to 2006, the FDA had said don't use that laser for this procedure. And so to the extent that the CLRA allows for a cause of action to proceed on an omission. I think your problem here is that the Food, Drug, and Cosmetic Act says, quote, all such proceedings for the enforcement or to restrain violations of this act shall be by and in the name of the United States. And my position is we're not looking to enforce that. I thought you wanted an injunctive relief. Well, what we're saying is that. Did you ask for injunctive relief? That was part of the remedies that were sought. Yes. Yes. But it's not to enforce the act itself. It's to prevent these sorts of procedures from going forward. Obviously, we're outside of that period now because it's been approved. But these sorts of procedures from going forward using this laser without making that disclosure. So it wasn't to enforce the act. The substance of that was stop doing this. It's not FDA approved. And that's what this limitation that I read was. It would be you need to be clear with the patients that you're treating that this is not FDA approved. You have to disclose that fact. Because the fact that it wasn't disclosed is what's trying to be enforced here, not whether it was or was not FDA approved, but the fact that it was not disclosed to these patients when they went in for those procedures. So if you had an injunction against that, in effect, you would have required them to make an affirmative disclosure, correct?  I'm curious. Isn't that something that's solely in the province of the FDA since that would be a procedure or a requirement that's in addition to what the FDA currently requires? I don't know that the FDA would require somebody to disclose that something had FDA approval. I think the issue here was the omission that it didn't have FDA approval, that this was an approved procedure, an approved way of using this laser. Is there any FDA regulation that says if there's an approved procedure, but you use it for an unapproved reason, the FDA requires an affirmative disclosure of non-approval? I don't know of any. And that wasn't alleged in the complaint. I understand, but that would then be an additional requirement that would put you into preemption land. If that requirement exists, but I don't believe that it does. The real issue here is what did these patients know coming in, and it was not disclosed to them what these physicians knew, and that was that they were not to use this laser. They had been told by the FDA not to use this laser for this procedure. I can see my time is up unless the panel has any further questions. Thank you very much. The case just argued, Perez v. Nidek, is submitted.
judges: Trott, Kleinfeld, McKeown